UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RON GLOVER, JR.,

        Plaintiff,

v.

CITY OF BENTON HARBOR, et al.,

        Defendants.
_____/

Case No. 1:23-cv-134

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initially filed his complaint in the United States District Court for the Eastern District of Michigan. In an order (ECF No. 10) entered on February 2, 2023, that court transferred the action to this Court for further proceedings. In an order (ECF No. 14) entered on February 3, 2023, the undersigned granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 15.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v.*

*Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."  *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."  *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."  *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal.  *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

2

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains, however, occurred during Plaintiff's arrest in Benton Harbor, Michigan, as well as at the Berrien County Jail (BCJ). Plaintiff sues the City of Benton Harbor, the Benton Harbor Police Department, the BCJ, and Police Officer Michael Steven Johnson. Plaintiff indicates that he is suing all Defendants in their official capacities. (ECF No. 1, PageID.2–3.) He also sues Defendant Johnson in his individual capacity. (*Id.*, PageID.2.)

Plaintiff alleges that the events about which he complains occurred in April of 2018. (*Id.*, PageID.6.) According to Plaintiff, officers from Benton Harbor were "responding to a call about a guy stealing a lawn mower." (*Id.*, PageID.5.) The officers tried to detain Plaintiff, but he "proceeded to ride off [on his bicycle] on [his] way home" because he did not have a lawn mower. (*Id.*) Defendant Johnson chased Plaintiff down, and Plaintiff was struck by the police truck. (*Id.*) Once Plaintiff was down on the ground, Defendant Johnson "continued to hold his knee on [Plaintiff's] neck." (*Id.*) Plaintiff "screamed for help" as this was happening. (*Id.*, PageID.6.) He alleges that Defendant Johnson kept his knee on Plaintiff's neck "even after [Plaintiff was] cuffed." (*Id.*, PageID.7.)

4

Plaintiff faults the Benton Harbor Police Department for dispatching the officers. (*Id.*, PageID.5.) He suggests that officers lied in their report and that Defendant Johnson was later fired because of the incident. (*Id.*) He also faults the City of Benton Harbor for employing the officers. (*Id.*)

Plaintiff was taken to the BCJ, where he claims he was denied medical attention for the wounds caused by Defendant Johnson. (*Id.*, PageID.5–6.) Plaintiff alleges he suffered pains in his legs, back, and hips from being hit with the police vehicle. (*Id.*, PageID.5.) Plaintiff also suggests that he was fed food he was allergic to and that officers at the BCJ harassed him because they heard that Plaintiff got Defendant Johnson fired. (*Id.*, PageID.6.) Plaintiff contends he was supposed to receive physical therapy, but that "the county denied" that. (*Id.*, PageID.8.)

Public news sources indicate while investigating the stolen lawn mower, officers "came upon a man on a bike without a head light, a state law and city ordinance violation." *See* "Fired BH Patrolman Facing Felony For Running Over Fleeing Suspect," https://www.moodyonthemarket.com/fired-bh-patrolman-facing-felony-for-running-over-fleeing-suspect/ (last visited Mar. 28, 2023). The man, who was Plaintiff, refused to stop. *See* "Former Benton Harbor Officer Charged After Allegedly Running Over Suspect with Patrol Vehicle," https://www.fox17online.com/2018/07/12/former-benton-harbor-officer-charged-after-allegedly-running-over-suspect-with-patrol-vehicle (last visited Mar. 28, 2023). Officers tried to block Plaintiff, but he "got off the bicycle and started running." *Id.* Defendant Johnson pursued Plaintiff with the squad car and

5

ultimately hit Plaintiff. *Id.* Defendant Johnson was charged with assault with a dangerous weapon. *Id.* Plaintiff ultimately pled guilty to resisting and obstructing a police officer and possession of marijuana with intent to deliver, and was sentenced to one year in the BCJ. *Id.*

Based on the foregoing, Plaintiff asserts that Defendant Johnson violated his constitutional rights by detaining him without probable cause and by using excessive force against him. (*Id.*, PageID.7.) Plaintiff also suggests that the BCJ violated his rights by failing to provide medical attention. (*Id.*, PageID.5.) Additionally, Plaintiff vaguely asserts that the City of Benton Harbor engaged in "First Amendment retaliation, fabrication of evidence, failure to supervise, and inadequate training." (*Id.*) Plaintiff seeks damages for his pain and suffering. (*Id.*, PageID.8.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

6

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Against the BCJ

As noted *supra*, Plaintiff sues the BCJ for failing to provide medical care for his wounds, as well as for feeding him foods to which he was allergic and allowing officers to harass him. A county jail, however, is a building that houses prisoners and pretrial detainees and is not a "person" capable of being sued under § 1983. *See Goldman v. Kalamazoo Cnty. Jail*, No. 1:16-cv-359, 2016 WL 3180043, at *2 (W.D. Mich. June 8, 2016) (collecting cases). For that reason alone, the BCJ will be dismissed as a Defendant.

Plaintiff indicates that he is suing the BCJ in its official capacity. The BCJ is an agency of Berrien County. Even if the Court assumed that Plaintiff intended to sue Berrien County, the county may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the county. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Moreover, the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103

8

F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* at 508. Plaintiff's complaint is devoid of any allegations suggesting that his alleged constitutional injury was the result of an official policy or custom employed by Berrien County or the BCJ. Thus, the Court will dismiss any intended claims against Berrien County. *See Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of custom or policy was conclusory, and plaintiff failed to state facts supporting the allegation).

### B. Claims Against the City of Benton Harbor and the Benton Harbor Police Department

Plaintiff sues both the City of Benton Harbor and the Benton Harbor Police Department. As an initial matter, the Police Department is "subsumed within [the City of Benton Harbor] as a municipal entity to be sued under § 1983." *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007); *see also Rhodes v. McDaniel*, 945 F.2d 117, 120 (6th Cir. 1991) (noting that sheriff's departments are part of a larger political subdivision and cannot be sued); *Hale v. Vance*, 267 F. Supp. 2d 725, 737 (S.D. Ohio 2003) (concluding that the Cincinnati Police Department was a "mere arm of the City" and "not its own entity" and, therefore, was "not capable of being sued" under § 1983). The Court, therefore, will dismiss the Benton Harbor Police Department.

With respect to Defendant City of Benton Harbor, Plaintiff essentially seeks to hold the City liable for employing the officers who arrested him. (ECF No. 1, PageID.5.) As noted above, the City may not be held vicariously liable for the actions

9

of its employees under § 1983. *See Connick*, 563 U.S. at 60; *Harris*, 489 U.S. at 392. Moreover, although Plaintiff makes a vague reference to "First Amendment retaliation, fabrication of evidence, failure to supervise, and inadequate training" (ECF No. 1, PageID.5), his complaint is devoid of any allegations suggesting that his alleged constitutional injury was the result of an official policy or custom employed by the City. The Court, therefore, will dismiss Plaintiff's claims against the City of Benton Harbor. *See Bilder*, 1993 WL 394595, at *2.

    **C.**    **Claims Against Defendant Johnson**

        **1.**    **Excessive Force**

Plaintiff contends that Defendant Johnson violated his constitutional rights by using excessive force against him in the course of Plaintiff's arrest. "Where, as here, [an] excessive force claim arises in the context of an arrest or investigatory stop of a free person, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting U.S. Const. amend. IV).

The right to make an arrest or investigatory stop has long been recognized to permit "some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)). Determining whether the force used in a seizure was "reasonable" within the meaning of the Fourth Amendment requires consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 138 (1978)). Moreover, the reasonableness of the force must be judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* at 396.

Plaintiff has clearly set forth facts that rise to the level of a Fourth Amendment excessive force claim, as Plaintiff alleges that Defendant Johnson hit him with the squad car and then held Plaintiff down with his knee on Plaintiff's neck. However, Plaintiff's Fourth Amendment excessive force claim is untimely. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). The statute of limitations for Plaintiff's excessive force claim began to run in April of 2018, on the date that the use of force occurred. Plaintiff did not initiate this suit until December 18, 2022, which is more than three years after April of 2018. Plaintiff also provides no basis for tolling of the statute of limitations. The Court, therefore, will dismiss Plaintiff's Fourth Amendment excessive force claim against Defendant Johnson as untimely.

### 2. Lack of Probable Cause

Plaintiff suggests that Defendant Johnson and the other involved officers lacked probable cause to detain him, in violation of the Fourth Amendment. The Fourth Amendment provides, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A § 1983 claim for wrongful arrest also turns on whether the officer had probable cause under the Fourth Amendment. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579–80 (6th Cir. 2003) (noting that "any arrest without probable cause violates the Fourth Amendment"). As noted above, Plaintiff was charged and pled guilty to resisting and obstructing a police officer and possession of marijuana with intent to deliver.

Plaintiff's Fourth Amendment lack of probable cause/unlawful arrest claim is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that an individual cannot assert a cognizable claim for damages under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he or she shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486–87 (footnote omitted). "Fourth Amendment claims arising out of searches [and seizures] occurring prior to Plaintiff's guilty plea [are] precluded by *Heck v. Humphrey*, on the grounds that a civil suit holding that these searches [and seizures] were improper would undermine the basis

12

of [Plaintiff's] guilty plea and sentence." *Jacob v. Twp. of West Bloomfield*, 531 F.3d 385, 388 (6th Cir. 2008); *see also Wallace v. Kato*, 549 U.S. 384, 393 (2007) (recognizing that *Heck* bars the pursuit of a Fourth Amendment arrest claim until the conviction is overturned, but concluding that the action accrues at the time of the arrest).

Here, a finding that Defendant Johnson and the other officers lacked probable cause to detain and arrest Plaintiff would imply that his convictions and sentence were invalid. Plaintiff's probable cause claim is, therefore, barred by *Heck*. *See Schreiber v. Moe*, 445 F. Supp. 2d 799, 812–13 (W.D. Mich. 2006) (concluding that a finding that an officer lacked probable cause to arrest the plaintiff would imply the invalidity of his misdemeanor conviction and, therefore, was barred by *Heck*), *reversed in part on other grounds by Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010); *see also Barton v. Priest,* No. 05–73415, 2008 WL 4372637, at *4 (E.D. Mich. Sept.19, 2008) (finding plaintiff's false arrest and illegal imprisonment claims were barred by *Heck* ). Plaintiff's Fourth Amendment lack of probable cause/unlawful arrest claim is, therefore, barred by *Heck* until his convictions have been invalidated.[2]

---

[2] As noted, Plaintiff's excessive force claim against Defendant Johnson is untimely. The Court notes, however, that if Plaintiff's excessive force claim were not untimely, it would not necessarily be barred by *Heck*. An excessive force claim may conflict with a prior conviction when (1) "the criminal provision makes the lack of excessive force an element of the crime," or (2) "excessive force is an affirmative defense to the crime." *Schreiber*, 596 F.3d at 334. Certainly, these elements would not be present for a conviction for possession of marijuana with intent to deliver. Moreover, the Sixth Circuit has held that "a conviction for resisting or obstructing arrest under Michigan Compiled Laws § 750.81d does not bar a subsequent excessive force claim under section 1983, because the statute does not require that the State prove or the defendant admit that the arresting officer did not use excessive force." *Stelle v. Twp.*

A court's dismissal of a claim on the basis that it is barred by *Heck v. Humphrey* is properly considered a dismissal for failure to state a claim on which relief can be granted. *See Hunt v. Michigan*, 482 F. App'x 20, 22 (6th Cir. 2012) (holding that a claim barred by *Heck* is properly dismissed for failure to state a claim); *Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (same). However, the dismissal of Plaintiff's Fourth Amendment lack of probable cause/unlawful arrest claim will be without prejudice. *See Sampson v. Garrett*, 917 F.3d 880, 882–83 (6th Cir. 2019) (citing *Taylor v. First Am. Bank-Wayne*, 973 F.2d 1284, 1289 (6th Cir. 1992)).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule

---

*of Flint*, No. 14-13640, 2015 WL 6470887, at *4 (E.D. Mich. Oct. 27, 2015) (citing *Schreiber*, 596 F.3d at 334).

14

of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  April 5, 2023                                  /s/ Phillip J. Green
                                                                               PHILLIP J. GREEN
                                                                               United States Magistrate Judge